## THOMAS MORTON

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. INDICTMENT—*confidence game.* An indictment which is framed substantially in the form of the second section of the act of Feb. 27, 1861, charging the defendant with unlawfully and feloniously obtaining money by means of the confidence game, is good.

2. SAME—*returning of into court.* There is not error in a record which recites: " Be it remembered, that on the 18th day of March, 1868, the following indictment was filed, to-wit," and then gives a true copy of the indictment, indorsed, " a true bill," with the names of the witnesses.

3. CONSTITUTIONAL LAW—*confidence game.* The act above referred to, defining creating and punishing the confidence game, is not in violation of the 9th section of Article 13 of the Constitution.

4. PRACTICE—*in criminal cases—list of witnesses.* Where the names of some witnesses appear upon the back of the indictment, the court will presume that the accused was satisfied with the list furnished, unless the record shows that he demanded a more complete list.

5. SAME—*custody of the jury.* Where the record shows nothing to the contrary, it will be presumed that the court hearing the trial discharged its duty by sending a sworn officer with the jury.

6. NEW TRIAL—*withdrawal of a plea.* Where a defendant pleaded not guilty, and afterwards by an agreement, this plea is withdrawn, to let in a motion to quash the indictment, with a stipulation that if the motion is overruled the trial shall immediately proceed, the effect of the stipulation is to re-enter the plea after the motion is overruled.

7. JUDGMENT AND SENTENCE—*time to take effect need not be stated.* In cases not capital the time when the sheriff shall execute the sentence of the court forms no part of the judgment or sentence, and need not be entered of record.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

This was an indictment against Thomas Morton, charging him with obtaining money by means of the confidence game.

The record, after the caption, commences as follows : Be it remembered, that on the 18th day of March, 1868, the following indictment was filed, to-wit :

State of Illinois, ⎫ ss.
    St. Clair county, ⎰

Of the March term of the St. Clair Circuit Court, in the year of our Lord 1868.

The Grand Jurors chosen, selected and sworn, in and for the county of St. Clair, State of Illinois, upon their oaths present, that Thomas Morton and James Stewart did, on the 18th day of February, in the year of our Lord one thousand eight hundred and sixty-eight, in the county of St. Clair aforesaid, unlawfully and feloniously obtain from one Daniel Hughes thirty dollars of his money, by means and by use of the confidence game, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the state of Illinois.

And the jurors aforesaid, in the name and by the authority aforesaid, upon their oaths aforesaid, do further present, that Thomas Morton and James Stewart, on the day and year aforesaid, and in the county aforesaid, did unlawfully and feloniously obtain from Daniel Hughes one United States legal tender treasury note, for the payment of ten dollars and of the value of ten dollars, one bank note for the payment of ten dollars and of the value of ten dollars, and two bank notes for the payment of five dollars each and of the value of five dollars each, the personal property then and there of the said Daniel Hughes, by means and by use then and there of the confidence game, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Illinois.

J. B. HAY, States Attorney.

On the back was written, "A true bill, Vital Jarrot, fore-man ;" and then followed the names of three witnesses for the prosecution.

The defendants first pleaded not guilty ; afterwards, by leave of court, this plea was withdrawn, and a stipulation entered into that if a motion to quash which was then made should be overruled, the defendants should proceed at once to a trial.

The motion to quash was overruled and the case called for trial, when Stewart pleaded guilty, and a jury was called, and the trial of Morton proceeded, and resulted in a verdict of guilty, and a two years' sentence to the penitentiary.

The record of the sentence is as follows : "Therefore, be it ordered and adjudged by the court, that the said defendants, Thomas Morton and James Stewart, be taken from the bar of this court to the common jail of St. Clair county from whence they came, and from thence by said sheriff of said county, within————days from this date, to the penitentiary of this State at Joliet, and be delivered to the warden or keeper of said penitentiary ; and the said warden or keeper is hereby commanded to take the bodies of the said Thomas Morton and James Stewart, and confine them in said penitentiary in a safe and secure custody for and during the term of two years from and after the delivery hereof, one day of said term in solitary confinement, and the residue of said term at hard labor, and that they be thereafter discharged.

Morton, by his counsel, moved for a new trial, and the motion was overruled ; and then in arrest of judgment, which was also overruled, and the case brought here.

The plaintiff in error assigns the following errors :

1st.   The court erred in overruling the motion to quash the indictment and each count thereof.

2d.   The court erred in overruling the motion in arrest of judgment.

3d.   The court erred in putting Morton upon trial without being furnished with a list of the witnesses against him.

4th.   The court erred in ordering a trial, and actually trying the cause without a plea of not guilty being interposed and entered of record.

5th.   The judgment of the court is uncertain and indefinite, in not stating a certain day when Morton is to be taken to the penitentiary.

6th.   The court erred in not sending an officer sworn for that purpose, to attend the jury to some convenient place.

7th.   The court erred in overruling motion for new trial.

Messrs. WINKELMAN & DILL, for the plaintiff in error, upon the main questions considered by the court, contended:

1st.   It is one of the essentials of an indictment that the special matter of the whole fact should be set forth with such certainty that the offence may judicially appear to the court. *People* v. *Taylor*, 3 Denio 91; *Lambert* v. *People*, 9 Cowen 586; *Kit* v. *The State*, 11 Humph. 167; *Jones* v. *Robbins*, 8 Gray 342; *The State* v. *Longbottoms*, 11 Humph. 39; *Commonwealth* v. *White*, 18 B. Monroe R. 492; *Same* v. *Perrigo*, 3 Metcalf's R. 5.

2d.   As to the constitutionality of the second section of the act of 1867, concerning the confidence game, we refer the court to the following cases, decided by the Supreme Court of Mississippi, where the court held a statute of similar import to the one now under consideration unconstitutional. See *Murphy* v. *The State*, 24 Miss. 590-584; *Same* v. *Same*, 28 ib. 637; *Norris* v. *Same*, 32 ib. 373; *Hartman* v. *Commonwealth*, 5 Barr 60-66; *Commonwealth* v. *Phillips*, 16 Pick. 214.

Mr. ROBERT G. INGERSOLL, Attorney General, for the people.

The indictment is in exact accordance with the act of Feb'y 27, 1867, entitled "An Act to define and punish the crime

commonly called the confidence game," and is therefore suffi-
cient. 2 Scam. 233; 4 Scam. 35; 1 Chitty Crim. Law 170;
*Cannady* v. *People*, 17 Ill. 159.

The argument as to the unconstitutionality of the act is not
applicable, because this indictment does clearly set out the
nature and causes of the accusation. It charges that on a cer-
tain time the accused unlawfully and feloniously obtained from
a person named, money by means of what is commonly known
as the confidence game.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an indictment in the St. Clair Circuit Court, at the
March term, 1868, against Thomas Morton and James Stewart,
charging that on the 18th day of February, 1868, in that
county, they unlawfully and feloniously did obtain from one
Daniel Hughes, thirty dollars of his money, by means and by
use of the confidence game, contrary to the form of the stat-
ute &c.

The defendants were furnished with a copy of the indictment
and a list of the jurors, and being arraigned pleaded not guilty.
A motion was then made for a change of venue, which the
court denied, and leave was granted to withdraw the plea of
not guilty, in order that a ·motion to quash the indictment
might be heard, with a stipulation that if the motion was over-
ruled, the defendants would proceed to trial on that day. The
motion to quash was overruled, whereupon Stewart pleaded
guilty, and Morton being present in court and ready for trial,
a jury was impannelled and sworn, and having heard the evi-
dence, returned into court a verdict of guilty, as to Morton, and
fixed the time of imprisonment in the penitentiary at two
years.

Morton entered a motion for a new trial, which was over-
ruled. He then entered a motion in arrest of judgment, which
was also overruled, and judgment rendered on the verdict.

A bill of exceptions was duly filed, and the record brought here by writ of error to reverse the judgment, and various errors are assigned; the first and most important of which is, the refusal of the court to quash the indictment.

The indictment is framed according to the form given substantially, in the second section of the act of February 27, 1867, entitled, "An Act to define and punish the crime commonly called the confidence game."

The objection urged is, that the indictment does not set out the elements constituting the offence, and that the second section of the act is in violation of section 9, of article 13, of the Constitution of the State.

This is a grave charge against this act of the general assembly. Every presumption must be in favor of the constitutionality of an act passed by that body, and the party arraigning it must make out a clear case. The section of the constitution referred to, provides "in all criminal prosecutions the accused has the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him," &c.

It is insisted by the counsel for the plaintiff in error, that the accused cannot know, from this indictment, the exact charge against him, and the outer lines within which the evidence must be confined, and cannot know what evidence he will be required to meet; nor could a conviction under this indictment be pleadable in bar of another indictment for the same offence; nor can the court see in it that a legally defined crime has been committed. They insist that the term, "confidence game," has no definition "in law or literature," and that "no fifty men can be found who will define alike the confidence game." They further insist that the indictment should specify all the facts with such certainty that the offence may judicially appear to the court.

The answer to these objections going to the indictment, is found in section 277 of the criminal code, which provides that

"every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offence in the terms and language of the code, or so plainly that the nature of the offence may be easily understood by the jury."

The act in question, by the second section, provides, that in every indictment under this act, it shall be deemed and held a sufficient description of the offence to charge that the accused did on, &c., unlawfully and feloniously obtain, or attempt to obtain, (as the case may be), from A. B., his money, by means and by use of the confidence game.

This game is defined in the first section to be the obtaining or attempting to obtain from any person, money or property by means of the use of any false or bogus check, or by any other means, instrument or device commonly called the "confidence game."

Now, as these devices are as various as the mind of man is suggestive, it would be impossible for the legislature to define them, and equally so, to specify them in an indictment; therefore the legislature has declared, that an indictment for this offence shall be sufficient if the allegation is contained in it that the accused did, at a certain time and place, unlawfully and feloniously obtain or attempt to obtain the money or property of another by means and by use of the confidence game, leaving to be made out by the proof the nature and kind of the devices to which resort was had.

This is a statutory offence, and this court, in *Miller* v. *The People*, 2 Scam. 233, which was an indictment for having in possession instruments used in counterfeiting coin, held that the allegation that the defendant had in his possession, knowingly, and without lawful excuse, certain instruments and tools used in counterfeiting the coin current in this state, was sufficient, the allegation being in the words of the statute.

So in the case of *Cannady* v. *The People*, 17 Ill. 158, which was an indictment for selling spirituous liquors by a less

quantity than one gallon, it was held that the general averment of an illegal sale was sufficient, and that the kind of liquor, or name of person to whom sold, need not be averred; the court saying, when statutes create offences, indictments should contain proper and sufficient averments to show a violation of the law, and to enable the accused to meet the charge; and beyond this, particularity of specification might furnish a means of evading the law, rather than defending against an accusation.

All this is made apparent by the case before us, as the mind of man is so fruitful and inventive.

The nature and character of the so-called confidence game, has become popularized in most of the cities and large towns, and even in the rural districts, of this broad Union, and is well understood, and this defendant was distinctly apprized by the indictment of what he was called upon to defend. The accusation is sufficiently identified by the name of the victim. This name must appear in every indictment on this statute, and appearing there, no second indictment for the same offence could be successfully prosecuted. The conviction on this indictment could be always pleaded in bar of a second.

We are of opinion that the offence is so set forth in the indictment that the accused can be at no loss to know what it is with which he is charged, and can so prepare his defence; that he cannot be charged with one offence and arraigned for another and different offence, and that he cannot be tried again for the same offence, it being so distinctly specified in this indictment as to enable him if again charged with the same offence to plead this judgment in bar.

As to the constitutional objection, some of the cases referred to by the plaintiff in error may go to the extent claimed, but as we have a very scrupulous regard for the acts of a co-ordinate department of the government, whose exclusive duty it is to make laws, we cannot declare any enactment of that department null and void as being against the constitution, unless we

are fully convinced of the violation. We are not so convinced, and therefore must uphold the law.

Some minor points have been made by plaintiff in error, which we will notice.

The first in this series is, that it does not appear the indictment was returned into open court.

We think this sufficiently appears from the entry on the record by the clerk, that the following indictment was filed on the 18th day of March, 1868, it being of the March term, and copying the indictment endorsed a true bill, and signed by the foreman of the grand jury, with the names of the witnesses endorsed thereon.

The next objection is, the prisoner was not furnished with a list of the witnesses.

There is nothing in the record showing that he demanded any other list than the one appearing endorsed on the indictment, a true copy of which was furnished him. Had he desired another list for any purpose, he could have made his application to the court, which it nowhere appears he did. We must therefore presume he was satisfied with the list as it appeared on the back of the indictment.

As to the objection that it does not appear a sworn officer attended the jury in their retirement,—in the absence of all proof to the contrary, we must presume that an officer did attend the jury, as it is made the duty of the court so to provide, and in the absence of evidence to the contrary, we will presume performed its duty in this behalf.

Another point made is, that the record shows the plea of not guilty was withdrawn, in order to let in a motion to quash the indictment, with the express stipulation, if overruled, the trial should proceed. This stipulation reinstates the plea of not guilty, and the trial was regular.

The remaining objection is, that no time is stated within which the sheriff shall execute the sentence of the court. In a capital case it would be necessary that a day for the execution

should be fixed by the court, but it rests with the sheriff when he will take a prisoner to the penitentiary, being required only to take him in a reasonable time after the adjournment of the court. The time or day on which the sheriff shall take and convey a prisoner to the penitentiary, is by no means an essential part of the judgment.

Perceiving no error in the record, the judgment is affirmed.

*Judgment affirmed.*