JOHN GRAHAM

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 19, 1899.*

1. INDICTMENT—*when indictment sufficiently charges attempt to obtain money by confidence game.* An indictment under section 98 of the Criminal Code, (Rev. Stat. 1874, p. 366,) which charges that the accused unlawfully and feloniously attempted to obtain from a specified person his money "by means and by use of the confidence game," sufficiently describes the offense under the express provisions of section 99 and of section 6 of division 11 of such code.

2. CONSTITUTIONAL LAW—*section 99 of Criminal Code is not unconstitutional.* The constitutional right of an accused person to demand the nature and cause of the accusation against him is satisfied by a charge in an indictment, framed under section 99 of the Criminal Code, that the accused unlawfully and feloniously attempted to obtain money from a specified person "by means and by use of the confidence game."

3. CRIMINAL LAW—*essentials of an attempt to commit a crime.* An attempt to commit a crime involves, as its essential elements, the intent to commit the crime, the performance of some overt act towards its commission and failure to consummate such crime.

4. SAME—*venue—where prosecution for obtaining money by confidence game should be instituted.* A prosecution under section 98 of the Criminal Code, for obtaining money by means of the confidence game, should be instituted in the county where most of the acts preparatory to the crime were committed and where the money was obtained.

5. CONFIDENCE GAME—*when attempt to obtain money by confidence game is not proved.* An indictment for an attempt to obtain money by means of the confidence game, of which the failure to consummate the crime is an essential element, is not sustained where it is shown the money was in fact obtained, although in another county than that in which the prosecution was had.

WRIT OF ERROR to the Circuit Court of Perry county; the Hon. M. W. SCHAEFER, Judge, presiding.

At the May term, 1898, of the Perry county circuit court the grand jury returned into open court an indictment against plaintiff in error containing two counts.

The first count presents that "John Graham, *alias* Jim Wheeler, late of the county of Perry and State of Illinois, on the seventh day of November, in the year of our Lord 1896, at and in the county aforesaid, unlawfully and feloniously did attempt to obtain from John A. Bowlin his money by means and by use of the confidence game, contrary," etc.

The second count presents that "the said John Graham, *alias* Jim Wheeler, *alias* James Wheeler, *alias* John Snearly, late of the county of Perry and State aforesaid, in the year of our Lord 1896, at and in the county aforesaid, unlawfully and feloniously did attempt to obtain from John A. Bowlin $1500.00 good and lawful money of the United States, and of the value of $1500.00, the property of the said John A. Bowlin, by means and by the use of the confidence game, contrary," etc.

A motion was made to quash the indictment for reasons stated in the opinion of the court. This motion was overruled, and exception was taken by plaintiff in error.

Plaintiff in error entered a plea of not guilty, and was tried before a jury, who found him guilty, as charged in the indictment, and found his age to be forty-one years. Motions for new trial and in arrest of judgment were made, and overruled, and exceptions were taken. Judgment was entered upon the verdict, and the plaintiff in error was sentenced to the penitentiary to be there confined until discharged by due process of law.

The material facts developed by the testimony are as follows: On November 5, 1896, a stranger approached John A. Bowlin on the streets of DuQuoin in Perry county, introducing himself to Bowlin as Jim Wheeler, and informing Bowlin that he had come to DuQuoin to see the latter to learn if he was related to Andrew Bowlin. John A. Bowlin stated that he had no relative by that name. Wheeler, or the man calling himself Wheeler, then proceeded to tell John A. Bowlin that he had had a partner by the name of Andrew Bowlin; that said Andrew Bowlin

had recently died at a town in central Illinois; that he was looking for some one who could fill his place; that he, Wheeler, and said Andrew Bowlin, and a certain Indian, who was stated to be then in the woods near Cairo, Illinois, owned a valuable gold mine in Arizona; that they had taken from said mine a large quantity of gold, and started to Washington, D. C., for the purpose of disposing of the gold at the government mint, and securing a patent or title from the government to the land, upon which the mine was located; but, that upon their arrival in Illinois, Andrew Bowlin sickened and died; and that he, Wheeler, and the Indian were both ignorant and uneducated and in need of some one to assist them in their enterprise. Wheeler then produced from his pockets specimens of ore, which, he stated, were gold of great value, and had been taken from his mine in Arizona; and that the Indian near Cairo had in his possession a large bulk of the gold in the form of two gold bricks or bars.

Bowlin then invited Wheeler to take dinner with him at the residence of his daughter, Mrs. Fishback, living in DuQuoin, where they both went. There, in the presence of Mrs. Fishback, Wheeler repeated his story of the gold mine in Arizona, the death of his partner, the presence of the Indian with the gold bars in the woods near Cairo, and again displayed the specimens of gold ore taken from the mine. Wheeler then and there offered to give Bowlin an interest in the mine and gold bricks upon such terms as the Indian would agree to, if Bowlin would go on to Washington with him, and attend to the business of securing the patent, etc. It was then arranged, that Bowlin should go with Wheeler that night, to-wit, the night of November 5, 1896, to Cairo. Accordingly, they left DuQuoin at eight o'clock in the evening, arrived in Cairo and stayed all night at the Halliday House, Wheeler requesting Bowlin to register his name as Jim Wheeler, claiming that he, Wheeler, could not read or write. Bowlin did so.

The next morning, November 6, 1896, Bowlin and Wheeler took a buggy, and went out on the Mississippi river in the woods above Cairo, and found the Indian with the bricks, which the latter produced. Wheeler produced an instrument with which they bored the bricks and took the borings, whereupon Wheeler and Bowlin returned to Cairo. When they arrived at Cairo they went to a jewelry store. Wheeler alighted from the buggy— Bowlin holding the horse—and went into the store. He returned with a card, which, as he claimed, had been handed to him by the jeweler; and he handed the card to Bowlin to read. The card bore the name of a man, stated to be a government assayer, at the Halliday House. Together they went there and found the man, claiming to be an assayer, and he tested or pretended to test the borings from the bricks, and pronounced them pure gold. Bowlin and Wheeler then returned to DuQuoin on the evening of November 6, and went out to Bowlin's home in the country, and remained during the night. The next morning they returned to DuQuoin together, and went to the First National Bank, where Bowlin drew from the bank $1500.00. Bowlin and Wheeler then returned to Cairo, and Bowlin took the money with him to the woods in Alexander county, and there delivered the same to Wheeler in exchange for the bricks, Bowlin to have one-third interest in the bricks which were valued at about $35,000.00, and one-third interest in the mine, for the $1500.00 paid and his services to be rendered in getting title to the land, on which the mine was located. Bowlin and Wheeler then returned to Cairo where Wheeler left Bowlin, in order, as he said, to take the Indian as far as New Orleans on his return to Arizona. Wheeler was to join Bowlin at Bowlin's home in a few days.

Upon his return to DuQuoin Bowlin became uneasy, and told certain parties of his transaction with Wheeler, and had his bricks examined, and learned that he had been deceived. Bowlin then saw nothing more of Wheeler

until November, 1897, when he went to Keokuk, Iowa, to see a man who had been arrested charged with a similar offense.  Arriving at Keokuk he found the plaintiff in error in jail under the name of John Graham.  Bowlin identified him as the same man, whom he had known as Jim Wheeler, and who had obtained his money, as above stated, in 1896, just one year before.

The present writ of error is sued out for the purpose of reviewing the judgment so entered by the circuit court.

WILLIAM S. FORREST, and BENJAMIN C. BACHRACH, for plaintiff in error:

An attempt to commit a crime is an intention to commit that crime carried beyond mere preparation and coupled with the doing of an overt act toward it, which is proximate to it but which falls short of the consummation of the crime through circumstances independent of the will of the doer.  1 Bishop on New Crim. Law, secs. 435, 728; 1 B. & H. Lead. Crim. Cases, 9; 1 Wharton on Crim. Law, secs. 173, 181; Clark on Crim. Law, 104; *Cox* v. *People,* 82 Ill. 191; *Patrick* v. *People,* 132 id. 529; *Scott* v. *People,* 141 id. 195; *Thompson* v. *People,* 96 id. 158; *Stabler* v. *Commonwealth,* 95 Pa. St. 318; *United States* v. *Stephens,* 3 Crim. L. Mag. 536; *Commonwealth* v. *Clark,* 6 Gratt. 675; *People* v. *Murray,* 14 Cal. 159; *Regina* v. *Eagleton,* 1 Dearsley, 515.

Careful discrimination should be made between the common law misdemeanor of doing some act toward the commission of a crime and with intent to commit such crime, and the statutory offense of an "attempt to commit" a particular crime, otherwise convictions will be obtained and sustained not within the intention of the legislature.  1 B. & H. Lead. Crim. Cases, 8; *Regina* v. *Williams,* 1 Den. C. C. 39; *Regina* v. *St. George,* 9 C. & P. 483; *Regina* v. *Lewis,* id. 523.

Acts done in pursuance of an intention to commit a crime do not constitute an attempt to commit that crime

181—31

unless they are immediately connected with the crime intended. 1 B. & H. Lead. Crim. Cases, 9; *Cox* v. *People,* 82 Ill. 191; *Patrick* v. *People,* 132 id. 529; *Regina* v. *Eagleton,* 1 Dearsley, 515; *Stabler* v. *Commonwealth,* 95 Pa. St. 318.

Where the substantive crime was committed (in the case at bar, the obtaining of the money by the confidence game,) the defendant cannot be convicted of an attempt to commit that crime. *Queen* v. *Nichols,* 2 Cox's C. C. 182; *Darrow* v. *Family Funds Society,* 42 Hun, 245; *Sullivan* v. *People,* 14 N. Y. Weekly Dig. 239.

The word "attempt," in the statute as well as in common parlance, imports failure. *Darrow* v. *Family Funds Society,* 42 Hun, 245.

The venue of an attempt to commit a particular crime is in the county where that crime would be committed if consummated. 1 Wharton on Crim. Law, (10th ed.) sec. 195; 28 Am. & Eng. Ency. of Law, 234; *Griffin* v. *People,* 26 Ga. 493; *Shannon* v. *Commonwealth,* 14 Pa. St. 226; *Smith* v. *Commonwealth,* 54 id. 209; *Miles* v. *State,* 58 Ala. 390; *Brown* v. *State,* 108 id. 18.

At common law an indictment is insufficient unless all the acts constituting the offense are expressly set forth in the indictment with such certainty as to individualize the transaction for which the accused is to be tried. *Cochran* v. *People,* 175 Ill. 28; Wharton on Crim. Pl. & Pr. (9th ed.) secs. 220, 221, 223; 1 Bishop on New Crim. Proc. secs. 81, 325, 625-630.

The indictment is also insufficient at common law because it does not contain a specific description of the property obtained or attempted to be obtained, or a legal excuse for not doing so. Property must be described as in indictment for larceny. *Smith* v. *State,* 33 Ind. 159; *State* v. *Crooker,* 95 Mo. 389; *State* v. *Rocheforde,* 52 id. 199; *State* v. *Reese,* 83 N. C. 637; *State* v. *Stimson,* 4 Zabr. 1; *People* v. *Conger,* 1 Wheeler's Crim. Cas. 448; *Markle* v. *State,* 3 Ind. 535; 2 Bishop on New Crim. Proc. 173; *Redmond* v. *State,* 35 Ohio St. 81.

At common law an indictment for an attempt to commit a crime must aver the specific act or acts which constitute the attempt, so that the accused may be informed of the precise act or acts which he is called upon to explain or disprove, and have a definite record in the event of a second prosecution, and so that the court may be able to determine, in the event of a preliminary question raised by a demurrer to the indictment or a motion to quash it, whether the acts alleged constitute such an attempt. *State* v. *Wilson*, 30 Conn. 500; B. & H. Lead. Crim. Cases, 7; 3 Ency. of Pl. & Pr. 97; 2 Wharton on Crim. Pl. & Pr. (9th ed.) secs. 221-223; *Randolph* v. *Commonwealth*, 6 S. & R. 398; *Thompson* v. *People*, 96 Ill. 158; *Commonwealth* v. *Filburn*, 119 Mass. 297; *Commonwealth* v. *Clark*, 6 Gratt. 575; 1 Wharton on Crim. Law, sec. 190.

"Indictment," in section 8 of the Bill of Rights in the constitution of Illinois, means just what it did at common law. The legislature may change it in form, but it cannot change the substance of its material averments. *Ex parte Slater*, 72 Mo. 102; *State* v. *Meyers*, 99 id. 107; *Terry* v. *State*, 109 id. 601.

Section 99 of the Criminal Code is invalid and unconstitutional, because it prescribes a form of indictment which does not inform the defendant of the nature and cause of the accusation against him and which is not due process of law. *Terry* v. *State*, 109 Mo. 601; 1 Bishop on New Crim. Proc. secs. 81, 84, 86, 88, 519, 566, 627; Wharton on Crim. Pl. & Pr. sec. 220; *United States* v. *Cruikshank*, 92 U. S. 542; *United States* v. *Carl*, 105 id. 611; Cooley's Const. Lim. 330, note 3; 2 Hawk. P. C. chap. 25, sec. 111; *State* v. *Gardner*, 28 Mo. 90; *State* v. *Rocheforde*, 52 id. 199; *Tully* v. *Commonwealth*, 4 Metc. (Mass.) 358; *State* v. *Davis*, 70 Mo. 467; *State* v. *Kesserling*, 12 id. 565; *Commonwealth* v. *Phillips*, 16 Pick. 211; *Landringham* v. *State*, 49 Ind. 186; *McLaughlin* v. *State*, 45 id. 338; *State* v. *Learned*, 47 Me. 426; *United States* v. *Trumbull*, 46 Fed. Rep. 755; *Murphy* v. *State*, 24 Miss. 590; *Evans* v. *United States*, 153 U. S. 584; *United States* v. *Hess*,

124 id. 483; *State* v. *Brandt,* 41 Iowa, 593; *United States* v. *Slenker,* 32 Fed. Rep. 691; *United States* v. *Goggin,* 1 id. 49; *In re Green,* 52 id. 112; *Williams* v. *People,* 67 Ill. App. 344; *Johnson* v. *People,* 113 Ill. 102; *Cochran* v. *People,* 175 id. 28; *United States* v. *Staton,* 11 Legal News, 191.

EDWARD C. AKIN, Attorney General, (C. A. HILL, B. D. MONROE, and C. R. HAWKINS, of counsel,) for the People:

An indictment charging that money was obtained by means and by use of the confidence game sufficiently describes the offense defined in section 98 of the Criminal Code, by virtue of the express provisions in section 99 that such description shall be sufficient, as well as by the general provision in division 11, section 6, making it sufficient to state an offense in the language of the statute, or so that its nature may be easily understood by the jury. *Maxwell* v. *People,* 158 Ill. 248; *Morton* v. *People,* 47 id. 468; *Miller* v. *People,* 2 Scam. 233; *Cannady* v. *People,* 17 Ill. 158; *Lyons* v. *People,* 68 id. 271; *McCutcheon* v. *People,* 69 id. 601; *Warriner* v. *People,* 74 id. 346; *Cole* v. *People,* 85 id. 216; *Fuller* v. *People,* 92 id. 182; *Kerr* v. *People,* 110 id. 627; *Seacord* v. *People,* 121 id. 623; *Loehr* v. *People,* 132 id. 504; *West* v. *People,* 137 id. 189.

An indictment which charges the crime substantially in the language of the statute is sufficient. The accused may, however, apply to the court for an order for a bill of particulars, and on the trial the People will be restricted to the items specified. *Williams* v. *Commonwealth,* 91 Pa. 493.

Attempts to commit crimes are cognizable in the place of the attempt. 1 Wharton on Crim. Law, sec. 288.

Such attempt must be cognizable in the place where the preliminary overt acts constituting the attempt are committed. 1 Wharton on Crim. Law, sec. 195.

To solicit one to commit an offense is an indictable attempt. The indictment must evidently be in the county where the soliciting is done, or at least it must be if the

other takes no step, though the ultimate offense were to be in another county.  1 Bishop on Crim. Proc. sec. 57.

At common law an attempt to commit a felony is a misdemeanor, but where the common law is superseded by a complete criminal code, an attempt to commit a felony is punishable only when it is made so by statute. 1 McLain on Crim. Law, sec. 221.

To constitute an attempt there must be the intent to commit a crime and some act done toward its consummation.  The intent alone will not be criminal, but when an act is done towards carrying it out, the law judges not only of the act but of the intent also.  1 McLain on Crim. Law, sec. 222.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This prosecution is based upon section 98 of the Criminal Code, which reads as follows: "Every person who shall obtain, or attempt to obtain, from any other person or persons, any money or property, by means or by use of any false or bogus checks, or by any other means, instrument or device, commonly called the confidence game, shall be imprisoned in the penitentiary not less than one year nor more than ten years."

The indictment was framed under section 99 of the Criminal Code which is as follows: "In every indictment under the preceding section, it shall be deemed and held a sufficient description of the offense, to charge that the accused did, on, etc., unlawfully and feloniously obtain, or attempt to obtain, (as the case may be), from A B, (here insert the name of the person defrauded or attempted to be defrauded), his money (or property, in case it be not money), by means and by use of the confidence game."

The motions, made by the plaintiff in error to quash the indictment and in arrest of judgment, were based upon two grounds.  In the first place, it is alleged, that

the indictment is insufficient as not expressly stating all the acts constituting the offense, with which the prisoner is charged, and as thereby failing to inform the prisoner of the nature and cause of the accusation against him. We are of the opinion, however, that the indictment is not invalid for the reason thus urged against it. This court has held in a number of cases that, where an indictment charges that money was obtained by means and by use of the confidence game, such indictment sufficiently describes the offense, defined in section 98 of the Criminal Code, because of the express provisions of section 99 above quoted, and also because of the general provision contained in section 6 of division 11 of the Criminal Code. Said section 6 provides, that "every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct, which states the offense in the terms and language of the statutes creating the offense, or so plainly that the nature of the offense may be easily understood by the jury." Said section 6 then gives a form for the commencement of an indictment. Section 98 of division 1, and section 6 of division 11, of the Criminal Code justify the framing of the indictment in the present case in the language in which it is above set forth. (*Morton* v. *People*, 47 Ill. 468; *Maxwell* v. *People*, 158 id. 248; *Loehr* v. *People*, 132 id. 504; *Seacord* v. *People*, 121 id. 623; *West* v. *People*, 137 id. 189; *Coffin* v. *United States*, 156 U. S. 432).

The second ground, upon which the indictment is claimed to be invalid is, that said section 99 is unconstitutional. The constitutionality of this act was considered in *Morton* v. *People*, 47 Ill. 468, and it was there held that the act, defining, creating and punishing the confidence game, was not in violation of the constitution of the State. Its constitutionality has been recognized by this court in a number of cases decided, since the case of *Morton* v. *People* was decided. We see no reason for changing the conclusion reached in *Morton* v. *People, supra,*

and decline to reconsider the grounds, upon which the conclusion arrived at in that case is based.

We are, therefore, of the opinion that the court below committed no error in refusing to quash the indictment, because of the insufficiency of its allegations, or because of the alleged unconstitutionality of the statute under which it was framed.

At the close of the evidence for the State, and again at the close of all the evidence, the plaintiff in error requested the court to give to the jury a written instruction to find defendant not guilty. The court refused to give the instruction so asked, and exception was duly taken.

The instruction No. 23, asked by the plaintiff in error, the defendant below, was refused as asked, but was modified and given as modified. To the giving of the instruction, as modified, exception was duly taken. Instruction No. 23 as asked was as follows:

"The court instructs the jury, that an attempt to obtain money by means of the confidence game consists of the following three elements: *First,* an intention to obtain money by means of the confidence game; *second,* the doing of some act toward the obtaining of money by means of the confidence game; *third,* the failure so to obtain the money. Unless said three elements have been each and all established by the evidence beyond a reasonable doubt, there has been a failure to prove the commission of the crime charged in the indictment."

Instruction 23, as modified and given, is as follows:

"The court instructs the jury that an attempt to obtain money by means of the confidence game consists of the following three elements: *First,* an intention to obtain money by means of the confidence game; *second,* the doing of some act toward the obtaining of money by means of the confidence game; *third,* the failure to so obtain the money in Perry county. Unless the said three elements have been each and all established by the evidence beyond a reasonable doubt, there has been a failure to

prove the commission of the crime charged in the indictment."

The modification made by the court was the insertion of the words, "in Perry county," after the word "money" in the third of the designated elements, constituting an attempt to obtain money by means of the confidence game.

The instruction, as asked by the plaintiff in error, correctly defined an attempt to obtain money by means of the confidence game.

Evidently, section 98 provides for the commission of two separate crimes. One is the crime of obtaining money by means of the confidence game, and the other is the crime of an attempt to obtain money by means of the confidence game. The words are: "every person, who shall obtain or attempt to obtain," etc. The use of the word "or" indicates that two offenses are described. (*United States* v. *Quincy,* 6 Pet. 464).

All the authorities, to which we have been referred, describe an attempt to commit a crime as consisting of three elements, to-wit: The intent to commit the crime; performance of some act towards the commission of the crime; and the failure to consummate its commission.

In American and English Encyclopedia of Law, (2d ed. vol. 3, p. 250), an attempt to commit a crime is defined to be "an act done in part execution of a criminal design, amounting to more than mere preparation, but falling short of actual consummation, and possessing, except for failure to consummate, all the elements of the substantive crime." It is also stated in the same text book, that the common elements of every attempt to commit a crime are "a criminal intent coupled with an overt act apparently adapted to effect that intent." (3 Am. & Eng. Ency. of Law,—2d ed.—p. 254). Bishop in his New Criminal Law, (vol. 1, sec. 435,) says: "Whenever a man, intending to commit a particular crime, does an act toward it, but is interrupted, or some accident intervenes, so that he fails to accomplish what he meant, he is still

punishable. This is called a criminal attempt." In Encyclopedia of Pleading and Practice (vol. 3, p. 97,) it is said: "An attempt in criminal law is an effort or endeavor to commit a crime amounting to more than a mere preparation or planning for it, and which, if not prevented, would result in the full consummation of the act attempted, but which in fact does not bring to pass the party's ultimate design." In *Patrick* v. *People*, 132 Ill. 529, we quoted with approval Bouvier's definition, which is as follows: "An attempt to commit a crime is an endeavor to accomplish it, carried beyond mere preparation, but falling short of the execution of the ultimate design in any part of it." In *Scott* v. *People*, 141 Ill. 195, it was said: "An attempt is an intent to do a particular thing with an act toward it falling short of the thing intended. When we say that a man attempted to do a thing, we mean that he intended to do, specifically, it, and proceeded a certain way in the doing." (See, also, *Cox* v. *People*, 82 Ill. 191; *Thompson* v. *People*, 96 id. 158).

It will be observed, that a failure to consummate the crime is as much an element of an attempt to commit it, as the intent and the performance of an overt act towards its commission. In *United States* v. *Quincy, supra,* the Supreme Court of the United States say: "To attempt to do an act does not, either in law or in common parlance, imply a completion of the act, or any definite progress towards it." Wharton in his work on Criminal Law, (vol. 1, sec. 173,) says: "An attempt is an intended apparent unfinished crime. * * * It must be unfinished, as otherwise the indictment would be for the complete crime." Again, in American and English Encyclopedia of Law (2d ed. vol. 3, p. 265,) it is said: "The act must fall short of the completed crime." It is also well settled, that mere solicitations do not prove an attempt. (*Cox* v. *People, supra; Thompson* v. *People, supra*).

The plaintiff in error in this case was indicted, not for obtaining money from the prosecuting witness, John A.

Bowlin, but for an attempt to obtain the same. The testimony shows, that the plaintiff in error succeeded in obtaining $1500.00 in money from the prosecuting witness. Plaintiff in error did not merely attempt to obtain money by means of the confidence game, but he did actually obtain money by means thereof. Here, the indictment charges the plaintiff in error with one offense, to-wit: an attempt to commit a crime, but the proof shows conclusively the completed and consummated commission of the crime, which is another and different offense.

Can a party, who is indicted for an attempt to commit a crime, be convicted under evidence, which shows that he did commit it? This is a question, about which the authorities seem to differ, so far as there are any authorities upon the subject. The general rule at common law was that, when an indictment charged an offense, which included within it any less offense or one of a lesser degree, the defendant, though acquitted of the higher offense, might be convicted of the less. (1 Bishop on New Crim. Law, sec. 1054; *Hanna* v. *People*, 19 Mich. 316; *State* v. *Jarvis*, 21 Iowa, 44; *Carpenter* v. *People*, 4 Scam. 197; *Kennedy* v. *People*, 122 Ill. 649; *Clifford* v. *State*, 10 Ga. 422). Thus, in *Kennedy* v. *People, supra*, where one was indicted for an assault with a deadly weapon with intent to inflict bodily injury, it was held that he might be convicted of a simple assault. Here, however, the indictment is not for obtaining money by means of the confidence game, such obtaining being the greater offense, and, therefore, the question is not whether, under an indictment for so obtaining money, a conviction could be had for an attempt to obtain it, the attempt being the less offense. The question here is, whether, where the indictment is for the less offense, proof of the greater will justify a conviction.

In *Queen* v. *Nicholls*, 2 Cox's Crim. Cas. 182, which was an indictment for an assault with an intent to commit rape, and where the proof showed that the rape was committed, the court held, that the prisoner should be ac-

quitted of the attempt to commit the rape. (Roscoe on Crim. Evidence,—3d ed.—p. 66; *Rex* v. *Hammon*, 1 East's P. C. 411; Archbold's Pl. & Pr.—10th ed.—485; *Sullivan* v. *People*, 14 N. Y. Weekly Dig. 239; *Darrow* v. *Family Funds, Society*, 42 Hun, 245). In *State* v. *Sheppard*, 7 Conn. 54, it was held, that proof of a rape would sustain an indictment for an attempt to commit a rape. The case of *State* v. *Sheppard* was based mainly upon the case of *Commonwealth* v. *Cooper*, 15 Mass. 187. The latter case, however, was disapproved of by Chief Justice Shaw in the subsequent case of *Commonwealth* v. *Roby*, 12 Pick. 496, and was virtually overruled by the latter case. The case of *State* v. *Sheppard*, *supra*, appears also to be opposed to other authorities, as will appear by a reference to 1 Bishop on New Crim. Law, secs. 788, 804, 809.

Inasmuch as our statute clearly defines the offense of an attempt to obtain money by means of the confidence game as being different and distinct from the offense of obtaining money by means of the confidence game, some force must be given to the provisions of the statute. It would appear to be logical, that, when a man is indicted for a particular offense, he must be proven guilty of that offense, and not of some other. It seems to follow that, if a man can be indicted for an attempt to commit an offense, and, under such indictment, be proven to have been guilty of the consummated offense, it would be unnecessary to make the latter a distinct crime. If proof, that a man obtained money by means of the confidence game, is proper under an indictment against him for an attempt to obtain money by means of the confidence game, then it would seem to be unnecessary in any case to indict him for the offense of obtaining money by means of the confidence game.

But, even if we are wrong in the views above expressed, the modification made of this instruction was erroneous. Instruction No. 23 attempted to define, in general language, an attempt to obtain money by means of

the confidence game. The insertion of the words, "in Perry county," in the manner, in which they were inserted in the instruction, makes it absurd. The words are not inserted after the word "attempt," nor after the first and second elements in which an attempt is stated to consist. The jury may have believed, that the plaintiff in error had the intention of obtaining Bowlin's money by means of the confidence game in Alexander county, where Cairo is located, and that he did an act towards obtaining money by means of the confidence game in Alexander county, but that his failure only was in Perry county. The proof shows that the crime was consummated in Alexander county. The crime, of which the plaintiff in error was guilty, if he was guilty at all, was the obtaining of Bowlin's money; and he obtained it in Alexander county, and not in Perry county. The State cannot split up one crime, and prosecute it in parts. (*Jackson* v. *State*, 14 Ind. 327). A consummated crime may involve an attempt—a successful attempt—to commit it, but such attempt is merely a part of the completed offense.

Section 9 of article 2 of the constitution says that, in all criminal prosecutions, the accused shall have the right to "a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." Section 4 of division 10 of the Criminal Code provides, that "the local jurisdiction of all offenses, not otherwise provided for by law, shall be in the county where the offense was committed." The crime of larceny is made an exception, and the offender may be tried in any county, to which he carries the stolen property, as well as in the county in which the property was first taken. This rule, however, has no application to any crime other than larceny. (Crim. Code, div. 10, sec. 8; *Campbell* v. *People*, 109 Ill. 565). The statutory offense of doing an act in attempting to commit a crime is punishable in the county where the crime, unless prevented, would have been committed. (28 Am. & Eng.

Ency. of Law, p. 234). An attempt to commit a crime "is cognizable in the place where, if not interrupted, it would have been executed; and from the very nature of things, it must be cognizable in the place where the preliminary overt acts, constituting the attempt, are committed." (1 Wharton on Crim. Law, sec. 195). Instruction 23, as modified, virtually told the jury, that a part of the preliminary overt acts, constituting the attempt, might be committed elsewhere than in Perry county where the indictment was found, and the trial was had. "The offense of attempt is complete in the county where the offense, if consummated, must have been committed." (*Griffin* v. *State*, 26 Ga. 493).

It is not only clearly shown by the proof in this case, that the crime of obtaining the money by means of the confidence game was perpetrated in Alexander county, and not in Perry county, but also that most, if not all the acts, constituting the preparation for the crime and going to make up the attempt to commit it, were performed in Alexander county. The prosecuting witness was taken to Alexander county; and in that county were found the Indian, and the pretended assayist, and the gold bricks. The act of assaying the ore was done in Alexander county.

It is well settled, that false representations, amounting to false pretenses within the meaning of the statute, do not constitute the crime, unless the property has been actually obtained. It is, therefore, generally held, that the crime of false pretenses is complete where the goods or moneys are obtained; and that, if the pretenses are made within one jurisdiction and the property or money is obtained in another jurisdiction, the person, making the representations, must be indicted within the latter jurisdiction. (7 Am. & Eng. Ency. of Law, p. 758).

In *State* v. *Shaeffer*, 89 Mo. 271, it was held that the crime, which consists in making use of false pretenses, is committed where the money or property is received, and that, in a prosecution for obtaining money or prop-

erty by means of false pretences, the place where the money or property is obtained, without regard to where the representations were made, is the place where the party should be prosecuted.

In *Connor* v. *State*, 29 Fla. 455, it was held that the receipt of property, obtained under false pretences, is the consummation of the offense, and when the pretences are made in one jurisdiction and the property is obtained by the offender in another jurisdiction, the prosecution should be instituted only in the latter jurisdiction, unless there is a valid statute permitting it elsewhere. (See also *Stewart* v. *Jessup*, 51 Ind. 413; *State* v. *House*, 55 Iowa, 466; *Norris* v. *State*, 25 Ohio St. 217). We see no reason why the same rule, which is applicable to the obtaining of money by false pretences, is not applicable to the obtaining of money by means of the confidence game. If this is so, then this prosecution should have been instituted in Alexander county, and not in Perry county.

If the words, "in Perry county," had not been inserted in instruction No. 23, the jury could not have found the plaintiff in error guilty of an attempt to obtain money by means of the confidence game, because, to do so, they would have been obliged to find that his attempt was a failure, whereas the proof shows, that the attempt was not a failure. The instruction virtually told the jury, that it made no difference whether the money was obtained by means of the confidence game in Alexander county or not, if there was a failure to obtain it in Perry county. In this respect the instruction was clearly erroneous. The law defines an attempt to commit a crime as including the failure to consummate it, as well as the other elements above mentioned, and the law does not necessarily limit such failure to any particular county.

The judgment of the circuit court is reversed, and the cause is remanded to the latter court for further proceedings in accordance with the views here expressed.

*Reversed and remanded.*