(No. 14428.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES FLYNN, Plaintiff in Error.

*Opinion filed April 19, 1922.*

1. CRIMINAL LAW—*when indictment sufficiently alleges larceny was committed in county where property was found.* An indictment for larceny alleging that defendant stole the property in one county "and did then feloniously carry said set of double harness so stolen as aforesaid" into another county, where the same was thereafter found and where the indictment was drawn, sufficiently alleges the commission of the crime in the latter county, under the statute which provides that when property is stolen in one county and carried into another the accused can be tried in any county into or through which the property passed or where it is found.

2. SAME—*when failure to find the age of the defendant is not prejudicial.* Where it is a fair inference from the circumstances in evidence that the defendant in a prosecution for larceny must necessarily be more than twenty-six years old, error of the court in failing to instruct the jury to find the age of the defendant and failure of the jury to make such finding will not be regarded as prejudicial to the defendant.

3. SAME—*when statement of State's attorney is improper.* In a trial for larceny a statement by the State's attorney in his closing argument that the State could have proved, if opportunity had been given, that the defendant's "reputation for common honesty and being a thief was bad," is improper and should be stricken on objection, even though the statement is in answer to the argument

of the defendant's counsel that the State's witnesses who testified to defendant's bad reputation for truth said nothing about his reputation for common honesty or that he was a thief or had the reputation of being a thief.

4. SAME—*when instruction as to effect of "recent possession" of stolen property is inaccurate.* An instruction that the "recent and unexplained possession of stolen property by the defendant, if the evidence so shows, tends to establish his guilt, and is sufficient, of itself, to authorize a conviction unless the inference of guilt thereby raised is overcome by other facts," is inaccurate in using the word "overcome" and in not showing that the word "recent" means recently after the theft.

WRIT OF ERROR to the Circuit Court of Warren county; the Hon. WILLIS F. GRAHAM, Judge, presiding.

HARTZELL, CAVANAGH, MARTIN & HARTZELL, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, CHARLES E. LAUDER, State's Attorney, and FLOYD E. BRITTON, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error was indicted at the September term, 1919, by the grand jury of Warren county for larceny, and on trial before a jury was convicted and thereafter sentenced on the verdict of guilty under the charge of the indictment, and the case has been brought here for review by writ of error.

The evidence shows that during October, 1918, plaintiff in error was living in Monmouth, in said county, and was acquainted with Hugh Clayton. A short time before the alleged crime, Ora Perry, a blacksmith at Monmouth, accompanied by plaintiff in error, had left an automobile owned by Perry at LaHarpe, in Hancock county, Illinois, and Perry had arranged with plaintiff in error to go back to LaHarpe by train and get the car and run it to Mon-

mouth. Clayton having learned that the plaintiff in error was going to LaHarpe, desired to go along, with a view of going from there to consult his attorney at Carthage, also in Hancock county. Upon arriving at LaHarpe the condition of the roads was such that the plaintiff in error thought it inadvisable to go to Carthage, and Clayton agreed. They then started back toward Monmouth, Flynn driving the car, the afternoon of the same day, leaving LaHarpe about four o'clock and arriving at Terre Haute, in Henderson county, Illinois, about five o'clock P. M. After getting supper they started on to Monmouth, going in a northerly direction out of Terre Haute, passing what is known as the Chandler farm and there turning east. The Chandler property was rented by Ed Sparrow. After passing Sparrow's place after dusk it was ascertained that they needed water for the car, and Clayton went back and brought some from the Sparrow place. They drove on east, stopping at several farm houses on account of trouble with the car, until they finally arrived at the residence of William Bricker, where, with the permission of Bricker, they stayed all night in his barn. Apparently Clayton was introduced by plaintiff in error to Bricker next morning as being a man named Smith, from Galesburg. While they were at Bricker's a garage man from Raritan was called on the telephone, who came out and fixed the car. Bricker and the garage man testified that while working on the car they looked all through it and saw nothing of a harness. Flynn and Clayton started for Monmouth, where they arrived in the afternoon of that same day. On the night that the plaintiff in error and Clayton drove in the car by the Sparrow place the evidence tends to show that a set of double harness disappeared from Sparrow's barn, and this same harness, about the middle of November following, was traded or sold by the plaintiff in error to Archie Murphy, who in turn sold the same to John Sheridan about February 20, 1919, and the same day was found in Sheri-

dan's possession by the sheriff of Warren county and kept in Sheridan's custody until the following September, when it was taken into the custody of the officers for the trial.

The evidence on the part of plaintiff in error was to the effect that he knew nothing of the larceny of the harness, but, on the contrary, he had purchased it from some horse traders in the tie-yards at Monmouth in October or November, 1918; that he had no knowledge that it had been stolen until the latter part of January, 1919, when Clayton informed him that he and his brother had stolen the harness and traded it to the horse traders; that this information came to him after he had disposed of the harness. The testimony of Clayton on this trial was to the effect that the harness was stolen by himself and plaintiff in error on the night they drove from LaHarpe by Sparrow's place in the car; that before arriving at the Bricker house that night plaintiff in error hid the harness in a cornfield, and that two or three days thereafter plaintiff in error and Clayton drove out from Monmouth to the cornfield and secured the harness and brought it to Monmouth.

Plaintiff in error's testimony that he purchased the harness from horse traders was corroborated by his son, James Flynn, a fourteen-year-old boy, who testified that his father brought the harness, or one that looked like it, to their home on the day that he testified he bought it from horse traders, and by Perry, who testified that on a certain day in November the horse traders, whom he identified as did plaintiff in error, were at his place of business, and that he heard them talking with Flynn about his trading a blind horse to them for the harness. Two women, Mrs. Anastasia Dailey, a married sister of plaintiff in error, and Miss Elizabeth Harvey, a neighbor, testified that they were present in January when Clayton told Flynn that the harness was stolen by him (Clayton) and his brother and had been sold to the horse traders. The evidence tended to show that Clayton for some reason had expressed very bitter feelings

against plaintiff in error; that he had been in the penitentiary and was out on parole at the time of the trial.

We find in the record no positive testimony corroborating Clayton as to plaintiff in error having anything to do with stealing the harness from Sparrow's farm. His counsel argue strenuously that the evidence against plaintiff in error does not justify his conviction. It is clear that Clayton's testimony as to the guilt of plaintiff in error is not directly corroborated in any way by any other testimony in the record and that his testimony is in conflict with the testimony of Mrs. Dailey, Miss Harvey and that of plaintiff in error himself. In view of our conclusion on other branches of this case we do not deem it necessary to pass directly on the question of the weight of the evidence, except to say that the testimony as to the guilt of plaintiff in error is of such a character that the ruling on the legal questions involved in the trial of the case should have been accurate.

The indictment under which plaintiff in error was convicted by its first count charged, in part, as follows: "One James Flynn, whose name to said grand jurors is otherwise unknown, late of the county of Warren, in the State of Illinois aforesaid, one set of double harness of the value of forty dollars, ($40,) the personal goods and property of Ed Sparrow, in the said county of Henderson being found, did then and there feloniously steal, take and carry away, and did then feloniously carry said set of double harness so stolen as aforesaid, into the said county of Warren and State of Illinois, where the same was thereafter found, all contrary to the form of the statute," etc. The other two counts of the indictment, in substantially the same language, charged the plaintiff in error with stealing, in the county of Henderson, a set of double harness and bringing the same feloniously into Warren county, and that the said set of double work-harness was found in said Warren county, etc.

It is argued by counsel for plaintiff in error that the indictment is faulty in charging that the harness was stolen in the county of Henderson while the indictment was found in the county of Warren. They concede that under section 399 of the Criminal Code, (1 Hurd's Stat. 1921, p. 1149,) where property is stolen in one county and carried into another the guilty person may be indicted, tried and convicted in the county into or through which the property may have passed or where the same may be found, but they argue that this indictment alleges only that the crime of larceny was committed in Henderson county and not in Warren county. The statute in question has been construed and held to mean that when property is stolen in one county and carried into another, the person committing the larceny can be tried in any county into or through which the property passed or where the same may be found; (*Graham* v. *People,* 181 Ill. 477; *Campbell* v. *People,* 109 id. 565;) and while an indictment under this statute, worded as is this indictment, has never been construed by this court, in considering indictments worded similarly under similar statutes in other jurisdictions it has been stated that the indictment will not be rendered bad if it states the facts to be that the property was wrongfully taken in one county and brought into the county where the prosecution is commenced. (1 McLain on Crim. Law, sec. 552; 25 Cyc. 85, and authorities there cited.) Decisions upholding indictments worded similarly to the indictment here in question as to the taking in one county and the carrying into another have been upheld in *Connell* v. *State,* 2 Tex. Ct. of App. 422, *State* v. *Alexander,* 118 Ark. 357, *Jones* v. *State,* 53 Ind. 235, *People* v. *Prather,* 134 Cal. 386, and *Bryant* v. *State,* 116 Ala. 445. The allegations of this indictment stated correctly the facts as to the original taking of the harness in Henderson county and taking the same feloniously into Warren county, and therefore did not in any way mislead the plaintiff in error or his counsel, and clearly, under the

authorities cited, the indictment was sufficient in alleging larceny of the harness in Warren county.

Section 2 of the Parole act provides that the jury on the trial of every case in the act enumerated, and the court on a plea of guilty, shall find the age of the defendant as near as may be. (1 Hurd's Stat. 1921, p. 1163.) This court has had this section of the statute before it in *People* v. *Tananevicz,* 285 Ill. 376, *People* v. *Dear,* 286 id. 142, and *People* v. *Simmons,* 299 id. 201. In the first of these cited cases the construction of the statute was not in any way passed upon but the court simply said the question was not there properly raised for review. In *People* v. *Simmons, supra,* it was said on page 203: "All trial courts should require the jury to make such finding where there is a jury trial, and on receiving pleas of guilty should hear evidence and make the same finding, so that it may clearly appear from the record that the court had discretion and exercised the proper discretion in sentencing defendant."

It is a fair inference from the record that plaintiff in error must necessarily have been over twenty-six years old at the time of the alleged crime, and plaintiff in error has not been in any way injured by the failure of the jury to find his age in the verdict. The court, in the form of the verdict, should have instructed the jury, if defendant was found guilty, to find his age in their verdict; but if the accused is not injured by the failure to find his age,—and the evidence for the People so shows,—he cannot complain of such error.

The record states that after the evidence was introduced, attorney Hartzell, counsel for plaintiff in error, while he was arguing the case on behalf of plaintiff in error to the jury, "stated to the jury that the witnesses who were called by the People to testify as to the general reputation of the defendant, James Flynn, for truth and veracity, said nothing about his reputation for common honesty, or that he was a thief or that he had the reputation of being a thief. There-

upon Mr. Lauder, the State's attorney, in his closing argument, and in reply to such argument by said Hartzell, stated to the jury, among other things, that Mr. Hartzell in his argument before you has said that witnesses called here in behalf of the People did not testify or say anything at all with reference to the reputation of the defendant for common honesty or that he had the reputation of being a thief. Mr. Lauder then stated, had the opportunity been offered for such testimony, or if the defendant had opened up the gates upon the question of the defendant's common honesty, the State would have produced the witnesses to show that his reputation for common honesty and being a thief was bad." This statement of State's attorney Lauder in his closing argument was objected to by counsel for plaintiff in error and the court overruled said objection, to which ruling exception was taken.

It is conceded by counsel for the State that the State's attorney should not have stated in his closing argument, when the record was silent on that point, what they could prove as to the common honesty of plaintiff in error, but they argue that he was justified in making this statement as a reply to the statement made by attorney Hartzell. This court has stated more than once that it is difficult, if not impossible, to lay down any inflexible rule as to the proper limit of an argument upon the facts and circumstances of a case before the jury. (*Gallagher* v. *People,* 211 Ill. 158.) Indeed, we have said that it is impossible to lay down any general rule in regard to what shall or shall not be said in the argument to the jury, and unless it is apparent that the accused has been injured by improper remarks the judgment will not be reversed on that ground, alone; (*Siebert* v. *People,* 143 Ill. 571;) but we have said that the trial judge should always see that the line of argument is kept within reasonable bounds, and not allow the defendant to be convicted or prejudiced on account of real or imaginary crimes for which he is not upon trial.

(*Bulliner* v. *People,* 95 Ill. 394; see, also, *People* v. *Mc-Cann,* 247 id. 130.) The statement of attorney Hartzell objected to is not subject to criticism and furnished no justification to the State's attorney in his argument to go outside of the record as to any facts.

In view of the character of Clayton's testimony as to the guilt of plaintiff in error and the contradiction of his testimony upon certain points, and in view of plaintiff in error's testimony as to how he obtained the harness, corroborated, as it is, in certain particulars, it was particularly important that plaintiff in error's testimony as to his connection with the alleged crime should not be prejudiced by any remarks of the State's attorney as to matters outside of the record concerning his character or the reliability of his testimony. We cannot say on this record that the jury were not unduly and improperly prejudiced by the State's attorney's statement, in his closing argument to the jury, that he could have shown that the reputation of plaintiff in error for common honesty and his being a thief was bad. The fact that the trial court refused to sustain the objection to this testimony and permitted it to stand added weight to the injurious character of the statement.

Counsel for plaintiff in error also object that the court erred in giving to the jury, over the objection of plaintiff in error, the following instruction:

"The recent and unexplained possession of stolen property by the defendant, if the evidence so shows, tends to establish his guilt, and is sufficient, of itself, to authorize a conviction unless the inference of guilt thereby raised is overcome by other facts and circumstances in evidence so as to raise in the minds of a jury a reasonable doubt of such guilt."

It is argued that this instruction is erroneous for several reasons: First, because it fails to state that the word "recent" means recently after the stealing and not recently before the finding of the indictment. There can be no

question that an instruction as to the "recent possession" of stolen property in cases of this kind should limit such possession to a time soon after the commission of the offense, and not allow the jury to think it meant recently before the indictment or trial, and the instruction in question was faulty in this regard. In case the indictment and trial are very shortly after the alleged stealing this point may not come up, but when a considerable time has intervened, as in this case, it is important to make the meaning of "recent" plain. It is also objected that the instruction is misleading because it says that unless the inference of guilt is "overcome by other facts and circumstances," etc., thus, it is argued, casting upon the accused the burden of proving that he was not guilty. There can be no question that the instruction, as it is usually worded, uses some other word than "overcome,"—such as the expression, unless such inference of guilt is "explained" by other facts and circumstances. While we might not consider the giving of this instruction alone reversible error, we think it was faulty in its wording in both the particulars urged and should not have been given as worded.

Counsel for plaintiff in error also urge that error was committed in giving several instructions on behalf of the People as to the question of reasonable doubt. We have more than once criticised the giving of several unnecessary instructions on this question to the jury. (*People* v. *Wallace*, 279 Ill. 139; *People* v. *Miller*, 292 id. 318; *People* v. *Seff*, 296 id. 120; *People* v. *Todd*, 301 id. 85.) What is said in those opinions sufficiently explains our position on the question, and we think the giving of the instructions for the People on reasonable doubt was objectionable but do not think it should be considered reversible error.

For the errors committed the judgment of the circuit court will be reversed and the case remanded.

*Reversed and remanded.*