## TURNIPSEED v. THE STATE.

1. An indictment upon the statute, which charges both the *cruel* and *unusual* punishment of a slave, is not bad, for duplicity.
2. Although the statute declares in general terms, that " No cruel or unusual punishment shall be inflicted on any slave," yet it is *not enough* that an indictment should merely pursue the words of the act ; but it should allege what punishment was inflicted, and how.

WRIT of error to the Circuit Court of Pickens.

The plaintiff in error was indicted by the grand jury of Pickens for having inflicted, "on a negro woman named Rachel, a slave, the property of him, the said Turnipseed, cruel and unusual punishment, against the peace and dignity of the State of Alabama." The accused traversed the indictment, and was tried by a jury, who returned a verdict of guilty, and assessed a fine of fifty dollars against him; for which sum, as well as the costs of prosecution, a judgment was rendered.

L. CLARK, for the plaintiff in error, made these points:—

1. The indictment is double in charging the infliction of punishment both *cruel* and *unusual.* To punish cruelly is one offence, and unusually is another; and they should have been so charged.

2. The indictment is too general: it should have stated what and how the punishment was inflicted. [4 Port. Rep. 413.]

ATTORNEY GENERAL, for the State. The first objection to the

indictment is not well taken. [State v. Murphy, at this term; Commonwealth v. Eaton, 15 Pick. Rep. 273.] It is enough, and in fact the safest course to charge the offence in 'the words of the statute, where, as in this case, it was created by an act of the Legislature. [State v. Brown, 4 Porter, 413; State v. Briley, 8 id. 472; State v. Saunders, 9 id. 326; State v. Duncan, id. 260; State v. Click, 2 Ala. Rep. 26; Archb. Crim. Plead. 52.]

COLLIER, C. J.—The first section of the sixth chapter of the penal code declares that, "No cruel or unusual punishment shall be inflicted on any slave, and any master, or other person having charge of a slave, who shall be guilty of inflicting such punishment, or authorizing, or permitting the same, shall be subject to indictment therefor, and on conviction thereof, be punished by a fine not less than fifty, and not exceeding one thousand dollars; and in addition thereto, be required to give security for his good behavior for the space of twelve months. [Clay's Dig. 431.]

It is certainly a *general* rule, that the defendant cannot be charged, in one count of an indictment, with two distinct offences. [Archb. Cr. Plead. 17, 63; Commonwealth v. Symonds, 2 Mass. Rep. 163.] Yet it is not believed that the indictment in the case at bar is obnox ous to the objection of duplicity. True, the statute makes two offences, or rather does not require that the punishment inflicted upon a slave shall be both *cruel* and *unusual* to subject the offender to its sanctions: it is enough if the proof show it to be either the one or the other. To punish cruelly is one, and unusually is another breach of criminal law.— The statute, it is apprehended, does not use the epitheths as synonymous, nor in contrast with each other; but it was merely intended to make the enactment sufficiently broad to embrace a high offence against good morals, no matter under what circumstances committed. *Cruel,* as indicating the infliction of pain of either mind or body, is a word of most extensive application; yet every cruel punishment is not, perhaps, unusual; nor, perhaps, can it be assumed that every uncommon infliction is cruel. But be this as it may, there may be punishment that is both cruel and unusual; thus, if a slave should be punished, even without bodily torture, in a manner offensive to modesty, decency and the recognized proprieties of social life, the offender would be charge-

able in the broad terms employed in the indictment. An offence, committed under such circumstances, might be charged according to its true character, without subjecting the indictment to the imputation of duplicity; and upon conviction, the accused would be liable to but one penalty.

Thus, in Rex v. Benfield, [2 Burr. Rep. 980,] the defendants were charged with singing and publishing divers scandalous, obscene and libellous songs; the court held, that several songs being published at the same time, constituted but one offence, although the publishing of any one of them would be an offence. [See, also, Rex v. Horne, Cowp. Rep. 672.] In The Commonwealth v. Eaton, [15 Pick. Rep. 273.] it was objected to the indictment, that it charged that the defendant "did unlawfully offer for sale, and did unlawfully sell," one-half of a lottery ticket. The court said, "It is true, that an offer to sell, without selling a ticket, is an offence by statute; but an offer to sell and actually selling is but one offence. A sale *ex vi termini* includes an offer to sell."—[See, also, 1 Hale's P. C. 560; Rex v. Crowther, 5 Car. & P. Rep. 216; Rex v. Holden, 1 Russ. & Ryan's Rep. 154.] This view of the law may suffice to show that the indictment is not bad for duplicity.

In respect to the second objection to the indictment, it was said, in The State v. Brown, [4 Port. Rep. 413,] that, "it is not always sufficient to pursue the very words of the statute, unless by so doing you fully, directly and expressly allege the fact, in the doing or not doing of which the offence consists." So it was held, in The State v. Duncan, [9 Porter's Rep. 260,] that "where a statute is introductive of a new offence, and prescribes its constituents without reference to any thing else, in an indictment founded upon it, it is enough to describe the offence in the terms of the act." And the law was laid down in equivalent terms in The State v. Click, [2 Ala. Rep. 26.] True, in The State v. Briley, [8 Porter's Rep. 474,] it was said, that in an indictment on a statute, "all that the law requires is a description of the offence in the words of the statute creating it. The only exception that is known to exist to this general rule, is, where a statute makes use of a technical term known to the law; as burglary, robbery, &c." This language is not to be understood as an expression of an abstract opinion of universal application; but it must be taken in reference to the case then before the court. There, the indict-

ment was founded upon a statute, which did not merely designate an offence, but characterized it by prescribing its constituents.    As applied to such an enactment, the remark of the court was clearly correct.

*Hawkins* says, that in charging a statutory offence, it is not "always sufficient to pursue the very words of a statute, unless by so doing, you fully, directly and expressly allege the fact in the doing, or not doing whereof the offence consists, without the least uncertainty or ambiguity."    Thus it has been adjudged, that an information on the statute of *Henry the Sixth*, for not abating so much of the price of wine sold as the vessels wanted of the statute measure, is insufficient, if it did not expressly show how much they wanted.    So an indictment on the statute against usury, should not merely allege that the defendant took more than the interest allowed by law; but it should be explicitly shown how much was taken.

In the present case, the statute merely denounces the cruel and unusual punishment of a slave as a public offence, and prescribes the punishment.    It does not declare with particularity what are its elements; and consequently, in framing the indictment the statute affords but little aid.    Under such circumstances, recourse is to be had to the rules of pleading in criminal cases.    According to these, the general terms in which the charge is made against the defendant, is not sufficient; but it should be alleged what punishment was inflicted and how, that the court might judge whether the accused should have been put upon his trial; that he may know what he is to defend against, and the jury know how to apply the evidence.

This brings us to the conclusion that the indictment is defective, because of the generality of the terms in which the defendant is charged.    We regret the necessity imposed on us, of reversing the judgment in this case, upon an objection taken after conviction, where the defect complained of, could scarcely have operated prejudicially to the defendant.    But we must hold the scales of justice in *equipoise*, and however odious the offence, we must admeasure right to every one according to law.

The judgment of the circuit court is reversed, and the defendant is directed to remain in custody to abide further proceedings, unless he shall be otherwise discharged.