Anthony (a slave) v. The State.

court is reversed, and the cause remanded.   Let the prisoner
remain in custody, until discharged by due course of law.

ANTHONY (a slave) vs. THE STATE.

[INDICTMENT AGAINST SLAVE FOR ATTEMPTING TO POISON WHITE PERSON.]

1. *Code construed by previous judicial decisions.*—The substantial re-enactment in
   the Code, of a previous statute, must be taken as a legislative adoption of
   the judicial construction which it had received.
2. *When offense may be charged in words of statute.*—When a statute merely desig-
   nates an offense, but does not in express terms prescribe its constituents, an
   indictment which charges the offense in the words of the statute, without
   more, is not sufficient.
3. *Sufficiency of indictment.*—In an indictment which charges an actual poison-
   ing, an allegation that the substance administered was a poison is unneces-
   sary; but an indictment for an attempt to poison must allege that the sub-
   stance administered was a poison.

FROM the Circuit Court of Barbour.
Tried before the Hon. EDMUND W. PETTUS.

THE indictment in this case charged "that Anthony, a
slave, the property of Elias G. Hodges, did attempt to poison
Elias G. Hodges, a white person, and Mary C. Hodges, a
white person, against the peace and dignity of the State of
Alabama."   The record does not show that the prisoner de-
murred to the indictment, or that he moved in arrest of judg-
ment.   It is not necessary to notice the rulings of the court
on the trial, which are set out in the bill of exceptions.

HILLIARD & THORINGTON, for the prisoner, contended that
the indictment was fatally defective, because it did not allege,
1st, that the attempt to poison was willful; and, 2dly, that it
was made with a poisonous drug, or with something that
would destroy human life.   They cited Code, § 3311; Tur-
nipseed v. The State, 6 Alá. 664; Clarissa v. The State,
11 *ib.* 57.

M. A. BALDWIN, Attorney-General, *contra*.

RICE, C. J.—By the 4th section of the 15th chapter of our penal code of 1841, it was declared, that every slave, who " shall attempt to poison, or to deprive any white person of life, by any means not amounting to an assault, and be thereof convicted, shall suffer death."—Clay's Digest, 472, § 4. In 1847, a case came before this court, in which a slave was indicted under that section, for an "attempt to poison" a white person, and in which it became necessary to put a construction on that section, in order to determine the sufficiency of the indictment. The opinion of the court was, that the offense which the law intended to punish was the actual attempt to poison, *by means in their nature calculated to accomplish it*; that the offense consisted in the attempt to do an act, which, if consummated, would cause death; that it could not be committed but by the actual attempt to administer a poisonous drug, or substance calculated to produce death; and that the indictment was bad, because it did not contain any statement that the substance administered was a deadly poison, or calculated to destroy human life.—The State v. Clarissa, 11 Ala. Rep. 57.

Several years after that part of said section of the penal code of 1841, which we have above copied, had received the construction above shown, it was re-affirmed by this court, in Ben. v. The State, 22 Ala. R. 9, and was substantially re-enacted and inserted in section 3311 of our present Code. Such re-enactment must be taken as a legislative adoption of the construction given to it in the case above cited.—Duramus v. Harrison, 26 Ala. Rep. 326.

But, independent of any legislative adoption of the construction given to it in The State v. Clarissa, that construction is clearly sustained by the authorities. The general rule of pleading, with respect to the statement of the offense, whether it be defined by the common law or by a statute, is, that the indictment must state *all the facts and circumstances* comprised in the definition of the offense. There are exceptions to this general rule; but a case arising under the words of the statute we are now considering, is not one of them. It is not sufficient merely to pursue the words of that statute,

because it merely designates the offense, but does not characterize it by prescribing in express terms its constituents; and because by pursuing the mere words of the statute, there is no full, direct, and express allegation of the main fact in the doing of which the offense consists, to-wit., the employment of a substance in its nature calculated to destroy human life. Turnipseed v. The State, 6 Ala. Rep. 664; Rex v. Powles, 4 Car. & Payne, 571; 1 Waterman's Arch. Crim. Pl. 85–88; 2 *ib.* 258, (where the form of an indictment for attempting to administer poison is given); Beasley v. The State, 18 Ala. Rep. 535; Trexler v. The State, 19 Ala. Rep. 21; Francois v. The State, 20 Ala. R. 83; The State v. Lea, 3 Ala. R. 602; 1 Bishop on Criminal Law, §§ 516, 517.

An allegation of an actual poisoning involves and includes, by necessary implication, an allegation that the substance employed was a poison; and therefore, for the poisoning of a spring, &c., our Code, by the form of indictment laid down in it, clearly authorizes the pleader to charge in the indictment the actual poisoning, without stating the means or substance used to accomplish it.—Code, § 3125, and form No. 24, on page 701; 2 East's P. C. 514. But an allegation of an attempt to poison does not, by necessary implication, involve or include an allegation that the substance employed in the attempt was in fact a poison, or that the means employed were calculated to destroy human life. Such attempt might be made by the administration of a substance not poisonous, but which was believed to be so by the person administering it; and if so made, it would not be an attempt to poison within the meaning of section 3311 of our present Code. No form of indictment under that section is laid down in the Code, and we hold, that, under it, no indictment for an attempt to poison can be good, which does not, by a direct and express allegation, impose upon the State the burden of proving that the substance employed in the attempt was a deadly poison, or calculated in its nature to destroy human life.

But we do not wish to be understood as deciding, or intimating, that where an attempt to poison is made by the employment of such substance, the slave making such attempt can avoid the penalty of the law, by showing that the *quantity* of the substance so employed was either too small

or too large to effect the death of the person upon whom the attempt was made. The legislature which framed the statute, had the power to make the quantity of the substance, as well as its *nature*, an ingredient of the offense. It is clear, we think, that they did make its *nature* an ingredient. Whether they made its *quantity* also an ingredient, we will not now decide, because it is not necessary to decide that point in the present case. If they did not make the *quantity* an ingredient of the offense, it is very certain that a slave cannot avoid the penalty of the statute, by merely proving his mistake or ignorance as to the quantity necessary to destroy life. See 1 Bishop on Crim. Law, §§ 518–523.

It is unnecessary to notice the other questions raised on the record. From what we have said above, we are compelled to hold the indictment to be bad, and on that account to reverse the judgment. The judgment is reversed; but the prisoner must remain in custody, to take his trial on a new indictment, unless in the mean time he be discharged by due course of law. Let a judgment be here entered accordingly.