## BERRY NALLS v. THE STATE.

### No. 5403. Decided March 10, 1920.

**1.—Murder—Burglary—Charge of Court.**

Where. upon trial of murder and a conviction of manslaughter, exceeding the minimum punishment, the evidence did not raise the issue of burglary, by firing into a house with intent to injure, etc., a charge on burglary, under article 1307, was reversible error.

**2.—Same—Statutes Construed—Burglary—Discharge of Firearms—Entry.**

Article 1307, Penal Code does not create a new offense or change the definition of the offense of burglary, but simply extends the enumeration of the manner of entry by the discharge of firearms into a house with intent to injure any person therein, but it is essential under article 1304 P. C., in every case of burglary that the entry be made with the intent to commit a felony or the crime of theft, and where the evidence did not suggest that the purpose of the defendant was to commit the crime of theft and that the shot was fired in such a manner that it could not have injured those within the house the offense could not have been burglary. Following: Miller v. State, 81 Texas Crim. Rep., 237; modifying: Railey v. State, 58 Texas Crim. Rep., 1.

Appeal from the District Court of Eastland. Tried below before the Hon. Joe Burkett, judge.

Appeal from a conviction manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

H. P. Brelsford, Walter L. Morris, and Davenport & Allen, C. R. Fields, for appellant.

Alvin M. Owsley, Assistant Attorney General, and J. H. Beavers, for the State.

MORROW, JUDGE.—The appellant was convicted of manslaughter, and his punishment fixed at three years' confinement in the penitentiary.

The deceased, Richburg, and the witness McGill were partners in the mercantile business, and occupied a small wooden building about twenty-four feet long with a partition about the center of it, using the front end for business purposes and the back end for living purposes. The deceased and McGill were, on the night of the homicide, in the back room of the building counting the day's sales. They had a box sitting on the floor between them, and money, both paper and silver, on the box. The occurrence was in the town of Ranger which had, by reason of the discovery of oil, attracted a large population within a short time, and had grown from a village to a city; and the Adjutant General of the State had assigned the appellant and one Bloxon, who were State Rangers, to aid the local officers in preserving the peace. The State Rangers were invested by law with the authority of peace officers; and the appellant and his companion, it is claimed, believing that there was gambling going on in the room mentioned, undertook an investigation, in the course of which appellant looked through the keyhole and heard money rattling and a rumbling, though he could not understand what was said. Bloxon, after looking through a crack in the wall, said to appellant: "They are gambling," and at the same time Bloxon put his hand against the bottom of the door, and began to ease it open—at least such is the testimony from the appellant's standpoint. When he had pushed the bottom of the door in about eight inches or a foot the door was pushed back, catching the arm of Bloxon between the door and the frame. Bloxon called to the parties to open the door, stating that they were Rangers, and failing to extricate his right hand, which was held in the door, he drew his pistol with his left hand and fired through the door, the bullet striking the floor a short distance from the door on the inside of the building. Immediately after the shot was fired the door flew open, according to appellant and Bloxon, and Bloxon entered, and someone struck him with a chair, and he fell on the bed. Seeing one of the parties in the act of striking Bloxon again with the chair, the appellant entered, drew his gun and fired, and just after he fired he saw McGill going out the side door. The parties were all strangers to each other.

As described by McGill, who was inside of the house, when the door was sprung in and he saw the hand he asked what was wanted and received the reply: ''We are coming in there.'' He then kicked the hand, and it was jerked back and a shot fired through the door which angled down to the floor. He seized a plank about seven feet long, and stepped back, and a hand with a gun in it was pushed through the door, and he struck at the hand with the plank. When this was done the door flew open, and the parties came in, and as they came in a shot was fired. The witness ran to a side door, noticing the deceased in a corner of the room exhibiting no arms. When he returned a few moments later Richburg was dead, and the appellant said: ''I am the man who did it.''

In an elaborate charge the court instructed upon the law of murder, manslaughter, and self-defense; also on the law of principals; the right to arrest; and embraced in his charge the following:

''Burglary, insofar as it concerns this case, may be constituted by the discharge of firearms or other missile into the house with intent to injure any person therein, and is a felony,'' proceeding upon the theory that if Bloxon fired into the house through the door with intent to injure someone he would be guilty of burglary, and that appellant, being present and knowing his unlawful intent, aiding or encouraging him, would also be guilty of burglary and thereby forfeit the right of self-defense. The facts were such as to authorize the trial court to qualify the right of self-defense by an appropriate charge, but in instructing the jury concerning the law of burglary the court, in our opinion, was dealing with a matter not raised by the evidence, and one likely to seriously injure the appellant. Under our statute it is essential in every case of burglary that the entry be made with the intent to commit a felony or the crime of theft. This is the express language of the statute defining burglary. P. C., Art. 1304. We think there is no evidence which suggests that the breaking in the present instance was with such intent. The appellant and his companion, according to the entire record were not actuated by any malice towards the deceased or his companion. They were strangers, Their action in approaching the house and in pushing in the bottom of the door was due to their zeal in enforcing the law against gambling. That they were mistaken both as to the fact that an offense was committed by the occupants of the room, and as to the extent to which they might lawfully go in investigating it or in bringing about an arrest, may be conceded. Still, there is nothing that suggests that their purpose was to commit crime or theft, and the evidence of both the State and the appellant tends to show that at the time that Bloxon fired through the door his hand was imprisoned, and he was the subject of attack. The shot was fired in a manner to go angling down to the floor; and if it was fired for the purpose of injuring those within the house, it could not have been burglary unless there existed also the intent to commit a felony. .

It is true that the statute, Article 1307, declares that the *entry* may be made by the discharge of firearms into a house with intent to injure any person therein. The intent being present ·this entry would bring the persons committing it within the law of burglary in the event that the injury intended was a felony, and not otherwise. Art. 1307 does not create a new offense or change the definition of the offense of burglary, but simply extends the enumeration of the manner of "entry." Miller v. State, 81 Texas Crim. Rep., 237, in which Railey v. State, 58 Texas Crim. Rep., 1, is modified.

The charge referring to the offense of burglary, therefore, in our judgment, was wrong in form and in substance. Even if the conduct of the appellant in the inception of the trouble was such as to deprive him of the right of perfect self-defense, the charge, putting into the case the question of burglary, cannot be held harmless because the punishment assessed exceeded the minimum.

Several of the other questions discussed in appellant's brief are not properly raised, and still others are such as are not likely to arise upon another trial.

Because of the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*