AUGUSTIN CORDERO V. THE STATE.

No. 18855. Delivered March 10, 1937.

The opinion states the case.

*Horace H. Shelton* and *W. R. Smith, Jr.,* both of Austin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is attempt to commit burglary; the punishment, confinement in the penitentiary for four years.

The count of the indictment under which appellant was convicted charged, in substance, that appellant attempted to break and enter the house of Francisco Ortunio by cutting and tearing a window screen, with the intent to make an assault with a pistol upon the said Francisco Ortunio, which pistol appellant was unlawfully carrying on and about his person.

Francisco Ortunio, Jr., a witness for the State, testified that on the 23rd of September, 1936, he was living in the home of his father, Francisco Ortunio; that he went to bed about 8 o'clock near a window; that his father was sleeping in another room; that his brother was sleeping in the room with him (the witness); that after retiring he heard someone scratch on the window screen; that looking toward the window, he saw appellant; that he secured a shotgun but did not fire at appellant; that his brother secured a pistol and fired several shots through the window at appellant; that thereupon appellant fired four or five shots through the window into the room; that after appellant left the witness looked at the screen and found that it had been cut; that the bed the witness was sleeping in on the occasion in question was generally occupied by his father and mother; that due to the fact that his father had been away from home earlier in the evening the witness had gone to sleep on his father's bed; that his mother had retired in another room because the witness was in her bed.

Francisco Ortunio, Sr., testified for the State that he was aroused by several shots being fired; that when he made an investigation he found bullet holes in the screen; that he observed that said screen had been cut; that when the shots were fired his wife was in bed with him.

Gus Herzog, a witness for the State, testified to having gone to the home of Francisco Ortunio, Sr., on the occasion in question and finding a screen to have been cut. He testified further that he later saw appellant and he had been shot in the stomach.

Appellant testified that he had been going to the home of Francisco Ortunio for several years for the purpose of seeing his (Ortunio's) wife. As was his habit, he went to the window of the room near which she had been accustomed to sleep. At this juncture, we quote from his testimony: "When I went to this window on this occasion, as I had been in the habit of doing, I scratched on the window and the woman didn't answer, but I was answered with a volley of shot. I do not know the

reason for the shooting because I had been there many times before and nothing had happened to me. After I had been shot I naturally tried to protect myself and fired into the room. I then ran from there and fell down several times. I think this was premeditated, as the boys never slept in that room. I didn't cut the screen at all. I just went there to the window as I had always been doing. I had been seeing this woman for several years and she had made trips to San Antonio with me and I had bought her dresses and clothing. Whenever I would come to see her she would tell some of the children to watch and tell her when daddy was coming. I bought her a lot of dresses and things she wanted and needed." We quote from the cross-examination of appellant: "The old man and his wife usually slept in this bed by the window and the old woman slept nearest the window. I knew he slept in that bed, in that room. I shot into that room three or four times that night. That is the room where I thought the old man was sleeping, because he always slept there. I was outside the window on the old man's premises when I did this shooting into his room. I do not think I shot every cartridge I had in my pistol. After I had been shot I went home and told my wife that I had been shot. My wife's name is Martinez. We were not married but just living together." Appellant testified further that he had gone to the house for the purpose of returning to Ortunio's wife some letters he had received from her.

Ortunio's wife did not take the stand and deny appellant's testimony to the effect that he had been coming to her home for approximately five years.

"Entry" as employed in Art. 1389, P. C., defining burglary, and Art. 1391, defining burglary of a private residence at night "may be constituted by the discharge of firearms or other deadly missile into the house, with intent to injure any person therein." Art. 1393, P. C.; Nalls v. State, 219 S. W., 473.

Art. 1402, P. C., reads as follows:

"An 'attempt' is an endeavor to accomplish the crime of burglary carried beyond mere preparation, but falling short of the ultimate design in any part of it. Whoever shall attempt to commit burglary shall be confined in the penitentiary not less than two nor more than four years."

It was the State's theory that appellant intended to shoot Francisco Ortunio with a pistol which he (appellant) was unlawfully carrying on and about his person. In other words, it was the State's contention that appellant attempted to commit the offense of burglary with the intent to commit an assault

on Ortunio with a prohibited weapon, which assault is a felony. That appellant discharged the pistol into the house was shown in the testimony of witnesses for the State, as well as that of appellant. Hence it would appear that there was an entry into the house in contemplation of Art. 1393, supra. Under the terms of Art. 1402, supra, an essential element of the attempt is that it shall fall short of the ultimate design in any part of it. We think the holding in People v. Lardner, 300 Ill., 264, 133 N. E., 375, 19 A. L. R., 721, applicable. We quote from the opinion as follows:

"Evidence that a crime has been committed will not sustain a verdict for an attempt to commit it, because the essential element of interception or prevention of execution is lacking. Graham v. People, 181 Ill., 477, 47 L. R. A., 731, 55 N. E., 179; People v. Purcell, 269 Ill., 467, 109 N. E., 1007; United States v. Quincy, 6 Pet., 464, 8 L. Ed., 465; 1 Wharton on Crim. Law, sec. 173; 16 Corpus Juris, 113. When an indictment charge an offense which includes within it a lesser offense, the defendant, though acquitted of the higher offense, may be convicted of the lesser; but that rule can not be applied to an attempt defined by the statute, because an essential element of the attempt is a failure to consummate the crime. The statute only includes a case where there is a direct, ineffectual act toward the commission of crime. If the evidence for the people proved the defendant quilty of the crime of larceny, he could not be convicted for an attempt which failed."

In 8 R. C. L., 277, it is said:

"It will be observed that a failure to consummate the crime is as much an element of an attempt to commit it as the intent and the performance of an overt act toward its commission. Hence when a crime is actually consummated that can be no prosecution for an attempt."

We think it is manifest that the evidence will not sustain a conviction for an attempt to commit burglary.

The State's attorney before this court confesses error.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.